LAW OFFICES OF
# JOSHUA N. GARICK, P.C.

EXHIBIT A

34 SALEM STREET, SUITE 202
READING, MASSACHUSETTS 01867
Phone: (617) 600-7520
Fax: (617) 600-7430
Joshua@GarickLaw.com
www.GarickLaw.com

March 27, 2019

**DEMAND LETTER PURSUANT TO G. L. C. 93A, §§ 1, *ET SEQ.*
THE MASSACHUSETTS CONSUMER PROTECTION ACT**

Standard Insurance Company
PO Box 2800
Portland, OR 97208-9929

Conduent Human Resource Solutions, LLC
2828 N. Haskell Avenue, Floor 9
Dallas, TX 75204

    **RE:   Matthew Garlick**

Dear Sir or Madam:

    Please be advised that I represent Matthew Garlick, individually and on behalf of all others similarly situated (the "Class"). I ask that all future correspondence and inquiries be forwarded to my attention. This letter shall serve as a formal demand pursuant to G. L c. 93A, § 9 – the Massachusetts Consumer Protection Act[1] – for the unfair and deceptive business practices discussed herein.

    The facts precipitating the demand are quite compelling. Rather than recount them separately, I attach a copy of a Class Action Complaint and Jury Demand. This Complaint is incorporated herein as if fully restated and will put you on notice of the facts and legal claims possessed by Mr. Garlick and the Class.

    Mr. Garlick hereby demands $100,000.00. Mr. Garlick also makes demand on behalf of the Class in the amount of $1,400,000.00. Combined, Mr. Garlick demands $1,500,000.00 and expressly reserves the right to prove additional damages at trial, as they continue to accrue.

    Notice is hereby given that you have thirty (30) days to respond with a reasonable offer of settlement. A failure to do so shall compel the commencement of a lawsuit wherein a judge is authorized to award treble damages, attorney's fees and costs as a punitive measure for your willful and knowing violation of Chapter 93A. I remain hopeful, however, that we can resolve this matter amicably and without the need of judicial intervention.

---

[1] As well as G. L. c. 176D.

<u>DEMAND LETTER, G. L. C. 93A, § 9</u>

Standard Insurance Company
Conduent Human Resource Solutions, LLC
March 27, 2019
Page 2

        Thank you for your attention, and I look forward to receipt of your timely response.

                                            Sincerely,

                                            Joshua N. Garick

Enclosure
cc:    Matthew Garlick

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                           SUPERIOR COURT DEPARTMENT

|  |  |
|---|---|
| MATTHEW S. GARLICK,<br>individually and on behalf of all others<br>similarly situated,<br>      Plaintiff,<br><br>v.<br><br>SHAW'S SUPERMARKETS, INC.,<br>NEW ALBERTSONS, INC.,<br>ALBERTSONS COMPANIES, INC.,<br>STANDARD INSURANCE CO., and<br>CONDUENT HUMAN RESOURCE<br>SOLUTIONS, LLC,<br>      Defendants. | C.A. No. |

## **CLASS ACTION COMPLAINT AND JURY DEMAND**

1.  There is an old idiom that nothing in this world is certain except death and taxes. The plaintiff, Matthew S. Garlick ("Garlick") was devastated when his wife of 28 years suddenly realized one of these certainties when she died unexpectedly on May 11, 2018. As if this was not traumatic enough, what happened next was simply unconscionable. Rather than help Garlick heal and mourn the death of his beloved wife, the defendants worked together to deprive Garlick of the death benefit on an insurance policy he had taken out on his wife's life, a policy that he had paid into each and every week of his approximately 30-year career working with the defendants. Indeed, it has become clear that there is yet another certainty of life – so long as death is certain, there will also be greedy corporate interests doing everything in its power to avoid paying claims on an otherwise valid life insurance policy. This lawsuit, filed on a class action basis, seeks compensation for each and every widow and widower – and other like participants – who face these unfortunate and inhumane circumstances.

1

## I. PARTIES

2. Garlick is an individual who resides in Rehoboth, Massachusetts.

3. Garlick married his wife Patricia Garlick ("Patricia") on October 17, 1989.

4. Patricia passed away on May 11, 2018.

5. Defendant Shaw's Supermarkets, Inc. ("Shaw's") is a Massachusetts corporation with a principal place of business in Massachusetts. Garlick was most recently an employee at the Dorchester Star Market Supermarket store, located at 4 River Street, Dorchester, Suffolk County, Massachusetts.

6. Defendant New Albertson's, Inc. ("New Albertsons") is an Ohio corporation with a principal place of business in Idaho.

7. Defendant Albertsons Companies, Inc. ("Albertsons") is a Delaware corporation with a principal place of business in Idaho.

8. Standard Insurance Company ("Standard") is an insurance company licensed to sell policies of insurance in Massachusetts. It has a principal place of business in Oregon and, upon information and belief, does not maintain a place of business in Massachusetts and does not keep assets within the Commonwealth.

9. Conduent Human Resource Solutions, LLC ("Conduent") is a Delaware limited liability company with a principal place of business in Texas and, upon information and belief, does not maintain a place of business in Massachusetts and does not keep assets within the Commonwealth.

## II. FACTUAL BACKGROUND

10. For nearly thirty years, Garlick has worked in various capacities at various stores operated by Shaw's, Albertsons and New Albertsons. His employment with the company

2

commenced in April of 1988.

11. Patricia, like Garlick, was also a long-time employee of Shaw's. She began working for the company in May of 1989.

12. As an employee, Garlick and Patricia were both eligible for certain employment benefits though Shaw's and its corporate parents New Albertsons and Albertsons.

13. This included life insurance benefits.

14. Garlick and Patricia were both offered a $50,000.00 life policy on their own lives, with the premiums paid for by Shaw's, Albertsons and New Albertsons (the "Basic AD&D Policy").

15. In addition, Shaw's, Albertsons and New Albertsons made an unsolicited offer of optional life insurance policies to both Garlick and Patricia.

16. These life insurance policies were underwritten by Standard. Enrollment, offers, solicitations, and processing was performed by Conduent, a third-party human resource management company who operates The Benefit Service Center and a benefit website for Shaw's employees to elect benefit coverage.

17. To elect coverage in various life insurance policies, all Garlick needed to do was to go to Conduent's website and click the coverages he desired. The website does not contain any policy language, or links that someone can use to access policy language. The website does not inform anyone that spouses who also work for an Albertsons subsidiary are not eligible to be insured under an optional life insurance policy that it touts simply as an "Optional Spouse Life Insurance" policy. Not once in his nearly thirty years of employment did Garlick ever receive any policy language or other notification that he could not insure Patricia's life. Not once in the thirty years of renewal elections was this made known to Garlick.

18.     Based on the unsolicited offers made by the defendants, Patricia purchased a policy on her own life with a death benefit equal to five times her salary (the "Optional AD&D Policy"). Patricia (or Garlick) could have elected this optional insurance up to six times their annual base pay. Patricia enrolled in the Optional AD&D Policy, and elected coverage equal to five times her annual base pay.[1]

19.     At all relevant times, Patricia paid the premiums on the Optional AD&D Policy by way of a weekly payroll deduction.

20.     In addition, based on the unsolicited offers of additional insurance made by the defendants, Garlick also purchased a policy insuring the life of his spouse (the "Optional Spouse Life Insurance Policy"). This policy had a $50,000.00 death benefit.

21.     At all relevant times, Garlick paid the premiums on this Optional Spouse Life Insurance Policy by way of a weekly payroll deduction for 28 years.

22.     When Patricia died in May of 2018, however, Standard denied the $50,000.00 claim on Garlick's Optional Spouse Life Insurance Policy.

23.     The Standard claimed that Patricia was ineligible to be insured as Garlick's "dependent," because she was also a "member."[2]

24.     At all times relevant hereto, all defendants knew of these circumstances, and yet they still all went ahead and offered the Optional Spouse Life Insurance Policy to Garlick notwithstanding this knowledge, they voluntarily accepted Garlick's premium payments on the Optional Spouse Life Insurance Policy, and they failed to otherwise notify Garlick that he was

---

[1] Because Patricia's salary was roughly $50,000.00/year at the time of her death, the death benefit on this policy was approximately $250,000.00.

[2] In its denial letter, Standard relied on the following language "A member may not be insured as both a Member and a Dependent."

4

paying for a policy of life insurance that it would later claim would be invalid.

25. To be clear, all of the defendants knew that Patricia was enrolled in the Basic AD&D Policy as a member when it made the unsolicited offer to Garlick to enroll in the Optional Spouse Life Insurance Policy. This was because Garlick and Patricia married <u>after</u> she began working at Shaw's (i.e., Garlick was ineligible to purchase life insurance on his spouse until they were married, and the marriage occurred after Patricia began working at Shaw's and was automatically enrolled in the company-paid Basic AD&D Policy).

26. Despite this knowledge, the defendants made the affirmative decision to ask Garlick if he wished to purchase coverage under the Optional Spouse Life Insurance Policy.

27. Indeed, despite this knowledge, Shaw's continued to make weekly deductions from his paycheck to pay for the Optional Spouse Life Insurance.

28. None of the defendants ever gave Garlick any indication that his coverage would later be denied.

29. None of the defendants provided Garlick or Patricia with policy language suggesting that his spouse would not be covered under a policy of insurance insuring the life of his spouse.

30. None of the defendants ever provided Garlick or Patricia with an opportunity to review policy language, as this information was intentionally concealed by all of the defendants.

31. When Garlick made a request to Standard that they provide proof or evidence that Garlick had received a copy of the policy language at any time, Standard said it had no such evidence and instead pointed the finger at Shaw's, indicating that it was the employer's responsibility, not the insurer's responsibility, to provide such evidence.

32. None of the defendants disclosed to Garlick or Patricia that each of these separate

5

life insurance policies were under a single policy that would make Patricia both a Member and a Dependent. Instead, it was clear to Garlick that each benefit offered by Shaw's was a separate and distinct product. Thus, even if policy language was provided by the defendants that suggested that someone could not be both a Member and a Dependent (of course, it was not), there was no way to know with certainty that a "Member" or "Dependent" under one policy could actually refer to the same person who is a "Member" of another policy.

33. It is clear that at all times relevant hereto, the defendants all represented to Garlick that the Optional Spouse Life Insurance Policy was a valid policy of insurance that was secured by timely payment of premiums over a 28-year span. The defendants intentionally omitted and otherwise failed to inform Garlick that he was paying for a policy that would never be honored.

34. Garlick reasonably relied on these representations in electing to purchase the Optional Spouse Life Insurance Policy and making premium payments for 28 years. Had Garlick known that Patricia was ineligible to be insured, he would not have elected coverage under the Optional Spouse Life Insurance Policy.[3]

35. In these 28 years of paying for the Optional Spouse Life Insurance Policy, Garlick made estate-planning and financial decisions based on the expectation that this policy of insurance was valid.

36. When Jenifer Joslin, Shaw's district human resource manager, learned of the denial, she reached out to Garlick and informed him that they were all in shock that the claim

---

[3] The solution here was simple. Because Patricia only elected coverage equal to five times her salary under the Optional AD&D Policy, when up to six times her salary was available, all she had to do was to elect coverage equal to six times her salary under the Optional AD&D Policy and the death benefits would have been the same. Garlick and Patricia would have done this had they been notified that the defendants were not going to honor the Optional Spouse Life Insurance Policy.

6

was not being paid, that Shaw's thought Garlick was entitled to be paid, and they told Garlick not to do anything because Shaw's would fight the denial on his behalf.

37. Patricia also elected he Optional Spouse Life Insurance Policy on Garlick's life. And while she had predeceased Garlick, it should be noted that Patricia made similar premium payments by way of a deduction from her weekly pay, for a policy of insurance that never would have been honored by the defendants. Indeed, all of the defendants are content on collecting premiums for a policy that will never be paid out, and have no intention of telling these insureds that their policies are worthless.

38. Accordingly, Garlick brings the claims here on his own behalf, and on behalf of all others similarly situated to him. This includes all employees of Albertsons, New Albertsons and Shaw's nationwide who were enrolled in the Optional Spouse Life Insurance Policy, where their spouse was also an Albertsons, New Albertsons or Shaw's employee. *See* G. L. c. 93A, § 9, G. L. c. 149, § 150; MASS. R. CIV. P. 23.

39. Garlick has filed a complaint with the Attorney General, Fair Labor Division, and has received permission to pursue this private cause of action.

### III. CAUSES OF ACTION

#### COUNT ONE
#### BREACH OF CONTRACT

40. Garlick readopts and realleges the preceding paragraphs, and incorporates them into this count.

41. Garlick, and members of the putative class, entered into a life insurance and employment contract with the defendants. In exchange for the services provided during the course of employment and premium payments, Garlick and members of the putative class would receive a death benefit upon the death of their spouses.

7

42. Garlick and members of the class have fully performed all covenants, conditions and obligations required by them, except to the extent made impossible by the defendants.

43. The defendants breached these contracts by failing to pay death benefits as required by the contract.

44. As a direct and proximate cause of this breach, Garlick and members of the putative class have incurred significant financial damages.

## COUNT TWO
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

45. Garlick readopts and realleges the preceding paragraphs, and incorporates them into this count.

46. Garlick, and members of the putative class, entered into a life insurance and employment contract with the defendants. In exchange for the services provided during the course of employment and premium payments, Garlick and members of the putative class would receive a death benefit upon the death of their spouses.

47. This agreement came with an implied duty of good faith and fair dealing by and between the parties that prohibits them from engaging in any activity or conduct which would prevent the other party from receiving the benefits of the contract.

48. Defendants breached this duty by failing to pay the death benefits, as agreed.

49. Defendants breached this duty by failing to disclose or otherwise inform Garlick and members of the putative class that spouses who also work for an Albertsons affiliate could not be insured under the Optional Spouse Life Insurance Policy.

50. Defendants breached this duty by failing to disclose or otherwise inform Garlick and members of the putative class that the Optional Spouse Life Insurance Policy was not a separate and distinct policy of insurance from the Basic AD&D Policy that automatically

8

covered all employees.

51. Defendants breached this duty by offering the Optional Spouse Life Insurance Policy to Garick and members of the putative class knowing that it would not pay a claim under the policy.

52. Defendants breached this duty by failing to disclose or otherwise inform Garlick and members of the putative class of the terms and conditions (including its failure to provide policy language) of the Optional Spouse Life Insurance Policy.

53. As a direct and proximate cause of these breaches, Garlick and members of the putative class have incurred significant financial damages.

## COUNT THREE
### UNJUST ENRICHMENT/QUANTUM MERUIT

54. Garlick readopts and realleges the preceding paragraphs, and incorporates them into this count.

55. Garlick and members of the putative class conferred a benefit upon defendants through the work it provided during employment and the premium payments made for coverage under the Optional Spouse Life Insurance Policy.

56. Defendants' acceptance or retention of these benefits is inequitable under the circumstances outlined above and entitles Garlick and members of the putative class to restitution or such other compensation as is appropriate under the circumstances.

## COUNT FOUR
### PROMISSORY ESTOPPEL

57. Garlick readopts and realleges the preceding paragraphs, and incorporates them into this count.

58. Defendants promised to Garlick and members of the putative class that they

9

would pay a death benefit upon the death of a spouse.

59.  As a result of this promise, Garlick and members of the putative class reasonably relied on the payment of these death benefits to their economic detriment.

60.  Garlick further relied on the promises and representations of Joslin relating to the payment of the Optional Spouse Life Insurance Policy.

61.  As a direct and proximate cause of these breached promises, Garlick and members of the putative class have incurred significant financial damage.

## COUNT FIVE
### FRAUD

62.  Garlick readopts and realleges the preceding paragraphs, and incorporates them into this count.

63.  The defendants falsely stated that Garlick and members of the putative class would receive a death benefit upon the death of their spouses.

64.  The defendants falsely stated that Garlick and members of the putative class are eligible to participate in the Optional Spouse Life Insurance Policy.

65.  The defendants omitted the fact that a spouse who also works for an Albertsons affiliate would not be able to be insured under the Optional Spouse Life Insurance Policy.

66.  The defendants omitted and intentionally concealed policy language from Garlick and members of the putative class, that might indicate that their policies were worthless.

67.  The defendants omitted and intentionally concealed the fact that the Optional Spouse Life Insurance and Basic AD&D Policy were part of the same policy of insurance, and instead held these policies out as separate and distinct insurance policies.

68.  These facts and omissions were all material to the decision by Garlick and members of the putative class to participate in the Optional Spouse Life Insurance Policy, and to

10

forego other policies of insurance or estate/financial planning products.

69. All statements and omissions were made intentionally to encourage Garlick and members of the putative class' participation in the Optional Spouse Life Insurance Policy and to encourage the payment of premiums despite fully knowing that the claims would never be paid.

70. Garlick and members of the putative class reasonably relied on these false statements of material facts and omissions to their economic detriment.

71. As a direct and proximate cause of this conduct, Garlick and members of the putative class have incurred significant financial damage.

### COUNT SIX
#### UNFAIR AND DECEPTIVE BUSINESS PRACTICES, G. L. C. 93A AND G. L. C. 176D
#### AGAINST STANDARD AND CONDUENT ONLY

72. Garlick readopts and realleges the preceding paragraphs, and incorporates them into this count.

73. At all relevant times, all defendants were engaged in trade or commerce.

74. Defendants engaged in the fraudulent and deceitful conduct as described above, in violation of Chapter 93A.

75. Conduent, as the third-party human resource administrator for Shaw's, actively sought Garlick and members of the putative class' participation in the Optional Spouse Life Insurance Policy knowing that the polices were worthless.

76. Conduent, as the third-party human resource administrator for Shaw's, failed to provide policy language or other indication to Garlick and members of the putative class that the Optional Spouse Life Insurance Policy was worthless.

77. Conduent, as the third-party human resource administrator for Shaw's, continued to collect premium payments for this worthless Optional Spouse Life Insurance Policy.

78. At all times relevant hereto, Conduent, as the third-party human resource administrator for Shaw's, failed to inform Garlick and members of the class that their life insurance policies were worthless.

79. Standard voluntarily accepted premium payments for policies of insurance it believed were worthless.

80. Standard is in the business of insurance for purposes of G. L. c. 176D, § 1.

81. Standard failed to effectuate prompt, fair and equitable settlement of Garlick and members of the putative class' claims forcing them to initiate this litigation. *See* G. L. c. 176D, § 3(9)(f).

82. Standard misrepresented to Garlick and members of the putative class that the Optional Spouse Life Insurance Policy would provide a death benefit upon a spouse's death. *See* G. L. c. 176D, § 3(1)(a) and § 3(2); *see also* G. L. c. 176D, § 3(9)(a).

83. Standard used the various names of the different insurance policies (i.e., Basic AD&D, Optional AD&D and Optional Spouse Life Insurance Policy) to misrepresent the true nature of these policies (i.e., that they were all components of a single life insurance policy). *See* G. L. c. 176D, § 3(1)(e).

84. All other conduct and causes of action set forth in this Complaint constitute *per se* violations of the Massachusetts Consumer Protection Act.

85. Standard and Conduent committed these unfair and deceptive business practices willfully and knowingly.

86. As a direct and proximate cause of the defendants' unfair and deceptive conduct, Garlick and members of the putative class have incurred significant financial damage, and they are entitled to treble damages, attorneys' fees, expenses and costs.

## COUNT SEVEN
### NEGLIGENCE/NEGLIGENT MISREPRESENTATION

87. Garlick readopts and realleges the preceding paragraphs, and incorporates them into this count.

88. The defendants made false statements (and omissions) relating to Garlick and members of the putative class' eligibility for benefits under the Optional Spouse Life Insurance Policy.

89. Each of these defendants failed to exercise reasonable care or competence when they falsely represented that they would pay a claim under the Optional Spouse Life Insurance Policy.

90. The defendants each owed a duty to Garlick and members of the putative class to disclose all information about the Optional Spouse Life Insurance Policy so as to inform them that they would not pay a claim for a spouse if the spouse also worked for an affiliate of Albertsons.

91. The defendants breached this duty by failing to disclose this material and vital information.

92. Garlick and members of the putative class suffered pecuniary loss as a result of these negligent misrepresentations and all parties' justifiable reliance thereupon.

## COUNT EIGHT
### VIOLATIONS OF THE MASSACHUSETTS WAGE ACT, G. L. c. 149, § 148
### AGAINST SHAW'S, ALBERTSONS AND NEW ALBERTSONS ONLY

93. Garlick readopts and realleges the preceding paragraphs, and incorporates them into this count.

94. Defendants violated G. L. c. 149, § 148 by failing to pay Garlick and members of the putative class the wages he was owed promptly at the conclusion of the pay period.

13

95. Defendants violated G. L. c. 149, § 148 by making unlawful deductions and/or offsets from Garlick and members of the putative class' pay for a life insurance policy that should not have been offered to Garlick and members of the putative class.

96. Even to the extent that the Defendants claim that these deductions and offsets were authorized by Garlick and members of the putative class when they elected to participate in the Optional Spouse Life Insurance Policy, such a position is inconsistent with the Massachusetts Wage Act because such an agreement would be void as against public policy. *See* G. L. c. 149, § 148 ("[n]o person shall by a special contract with an employee or by any other means exempt himself from this section or from section").

97. As a direct and proximate cause of defendants' unlawful conduct, Garlick and members of the putative class have suffered significant financial damages.

98. Pursuant to G. L. c. 149, § 150, defendants are liable to Garlick and members of the putative class for treble damages, plus costs and reasonable attorneys' fees.

## IV. PRAYER FOR RELIEF

WHEREFORE, the plaintiff Matthew Garlick, individually and on behalf of all others similarly situated, respectfully requests that the Court order the following relief:

    A.    An order certifying the class as requested herein;

    B.    Actual and statutory damages;

    C.    Treble damages as required by law;

    D.    An order enjoining defendants from continuing to engage in the unlawful conduct alleged herein;

    E.    Attorneys' fees and costs to plaintiffs and the class; and

    F.    Such other and further relief as may be just and proper.

## JURY DEMAND

The plaintiff Matthew Garlick, individually and on behalf of all others similarly situated, hereby demand a trial by jury of all claims in this Complaint so triable.

 

Respectfully submitted,

Joshua N. Garick (BBO #674603)
LAW OFFICES OF JOSHUA N. GARICK, P.C.
34 Salem Street, Suite 202
Reading, Massachusetts 01867
Phone: (617) 600-7520
Joshua@GarickLaw.com

*Counsel for Matthew Garlick
and the Putative Class*

Dated: March 25, 2019

15






U.S. POSTAGE PAID
FCM LG ENV
LYNNFIELD, MA
01940
MAR 28, 19
AMOUNT
**$7.75**
R2305H127549-04

97208

7018 1130 0000 8591 4624

Date Received: 04/01/2019 09:01 AM

**Holcomb, Peter**

**C22**

USPS

900 SW 5th AVE    Routing #:IOFF318496

**JOSHUA N. GARICK, ESQ.**
LAW OFFICES OF JOSHUA N. GARICK, P.C.
34 SALEM STREET, SUITE 202
READING, MASSACHUSETTS 01867

TO:
Standard Insurance Company
PO Box 2800
Portland, OR 97208-9929

RECEIVED
SIC BENEFITS DEPT
APR 01 2019

RETURN RECEIPT REQUESTED

RECEIVED
APR 01 2019
GROUP LEGAL DEPARTMENT
STANDARD INSURANCE CO.